IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| DIANNE S. LARSEN, ) | |
| f/k/a DIANNE S. BUTTERFIELD, ) | |
| ) | CASE NO. BK10-42863-TLS |
| Debtor(s).  ) | A10-4098-TLS |
| NEBRASKALAND NATIONAL BANK, ) | |
| a national banking association, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| DIANNE S. LARSEN, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the motion for summary judgment by the debtor-defendant (Fil. No. 23) and the motion for partial summary judgment by the plaintiff (Fil. No. 28). The debtor-defendant has also filed two motions to strike the plaintiff's briefs and evidence, or portions thereof (Fil. Nos. 35 and 57). Jeffrey M. Eastman represents the debtor, and Katherine R. Hall represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The summary judgment motions are denied. The first motion to strike is denied. The second motion to strike is granted.

In 2000, the debtor filed a Chapter 7 bankruptcy petition. She was in default to NebraskaLand National Bank on a promissory note initially secured by a perfected security interest in a vehicle and other personal property as collateral. Shortly after filing the Chapter 7 case, and with the bank apparently unaware of the bankruptcy filing, the debtor and the bank entered into a note modification agreement on the loan to reduce the monthly payments. At the same time, the debtor also granted the bank a deed of trust in her residence. Thereafter, the parties entered into a reaffirmation agreement concerning the debt. The reaffirmation agreement was not filed with the court until two-and-a-half months later, after the debtor had received a discharge. The bank obtained a declaratory judgment that the reaffirmation agreement was valid despite being filed post-discharge. The debtor made payments on the loan until early September 2007. She filed this Chapter 7 case in September 2010 and has raised issues regarding the validity of the deed of trust. The bank filed this

adversary proceeding to except the debt from discharge, deny discharge, and confirm the secured status of the bank's claim.[1]

The parties have now moved for summary judgment, with the debtor arguing that the deed of trust and note modification agreement are void because they were executed in violation of the automatic stay, and as a result, the reaffirmation agreement is invalid and the debt should be discharged. The bank asserts that the order granting its motion for declaratory judgment is res judicata and the deed of trust cannot be set aside at this late date.

As a preliminary matter, the debtor has moved to strike portions of the bank's submissions in support of its motion for partial summary judgment. The first motion to strike deals with the bank's brief and index of evidence, which were filed late and without permission of the court. Local Rule 7056-1(A)(1) provides that briefs and evidentiary materials in support of a motion for summary judgment should be filed with the motion. The bank filed a combined motion for partial summary judgment and motion for a seven-day extension of time to file a brief, along with a Local Rule 9013-1 notice of resistance deadline. The debtor objected to the motion for extension, but the bank filed its brief and evidence index before the resistance deadline ran and the motion for extension was not ruled on. The debtor also points out that the bank failed to comply with Local Rule 7056-1(A)(3) because it did not number the paragraphs in its statement of material facts.

The debtor is correct in noting the bank's lack of compliance with local procedural rules. However, the bank's supporting materials were filed without substantial delay, and the debtor was able to formulate a response to the bank's unnumbered statement of facts in order to put the merits of this lawsuit before the court. The court does not condone non-compliance with the local rules, but because this case involves important issues of automatic stay violations, the validity of post-petition and post-discharge contracts, and the finality of court orders, the parties deserve to have the merits of the lawsuit addressed rather than disposed of on a technicality. The first motion to strike will be denied.

The second motion to strike concerns some of the bank's evidence. The motion is made under "Fed. R. Civ. P. 12 and Fed. R. Bankr. P. 7012," which presumably is intended to direct the court to Federal Rule of Bankruptcy Procedure 7012(f). Rule 7012(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The rule deals only with pleadings, not with exhibits offered in connection with a motion. Fed. R. Civ. P. 7(a); Fed. R. Bankr. P. 7007; *Jones v. Dolgencorp, Inc.*, ___ F. Supp. 2d ___, 2011 WL 2261480 (N.D. Iowa June 8, 2011). However, the substance of the debtor's motion can be considered under the Federal Rules of Evidence in determining the admissibility of the exhibits. The debtor complains specifically about the exhibits found at filings 41 through 46, which are documents related to criminal matters involving the debtor in 2008 and 2010. The bank's purpose in offering these documents appears to be only to show that the debtor, who was represented by counsel in each of those cases, had access to legal advice and could have challenged the deed of trust at an earlier

---

[1] The legal basis for the discharge and dischargeability claims is unclear from the complaint.

time. The relevance of the debtor's previous access to legal counsel in connection with criminal charges to the issues of the timeliness of the debtor's challenge to the deed of trust in this case is difficult to fathom. Even if such evidence were relevant under Federal Rule of Evidence 401, whatever probative value it may have is significantly outweighed by the prejudicial nature of the information and its potential to confuse the issues or be inflammatory. Fed. R. Evid. 403; *Jones* at *5-6. Therefore, the motion to strike Exhibits 41 through 46, and the references to them in the plaintiff's brief at filing 48, is granted.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, ___ U.S. ___, 129 S. Ct. 2658, 2677 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

The following facts, as taken from the parties' joint preliminary pretrial statement, are not in dispute:

1. On March 26, 1999, the bank made a secured loan to the debtor and her then-spouse, Steve R. Butterfield, in the principal sum of $30,028.00, as evidenced by the promissory note on Loan x2818.

2. Loan x2818 was payable at the rate of $763.02 per month for 48 months and secured by a duly executed and perfected commercial security agreement dated March 26, 1999. Collateral included a Mercury van, a utility trailer, and tanning salon equipment.

3. On September 24, 1999, at the debtor's request, the parties entered into a written substitution of collateral for Loan x2818 whereby a 1996 Chevrolet Suburban was substituted as collateral for the 1993 Mercury Villager van. The bank thereafter perfected its security interest in the Suburban.

4. In August of 2000, the debtor was in default on Loan x2818.

5. On October 23, 2000, the debtor filed a Chapter 7 bankruptcy at Case No. BK00-42150.

6. On October 27, 2000, the debtor remained in default on Loan x2818.

7. On October 27, 2000, the debtor and the bank entered into a note modification agreement and deed of trust in connection with Loan No. x2818.

8. The note modification reduced the debtor's monthly payment amount from $763.02 to $100.00.

9. On October 27, 2000, the debtor granted the bank a deed of trust to her primary residence at 315 South Silber, North Platte, Nebraska, legally described as Lot 7, Block 1, St. Mary 2nd Addition to North Platte, Lincoln County, Nebraska.

10. On October 27, 2000, the deed of trust was recorded in the office of the Lincoln County Register of Deeds.

11. The deed of trust was in addition to the existing financing statement and security agreement dated March 26, 1999, and any and all modifications pertaining to said agreements.

12. The notice of the filing of the debtor's Chapter 7 bankruptcy case is dated and filed October 23, 2000.

13. On November 14, 2000, the debtor filed an amended petition in her bankruptcy case.

14. On November 14, 2000, Bert Blackwell, who was the debtor's bankruptcy attorney at the time, wrote to the bank advising that the debtor "would like to reaffirm this debt [Loan x2818] with you."

15. Accompanying Mr. Blackwell's letter was a proposed reaffirmation agreement in Case No. BK00-42150. His letter requested that the bank sign and return the reaffirmation agreement to him for the debtor's signature and filing.

16. On November 15, 2000, the subject reaffirmation agreement was entered into between the parties.

17. The reaffirmation agreement provides as follows:

    3. The debtor further warrants as follows:
        A. That she is satisfied that sufficient information has been given to her so that she may make a fully informed decision concerning this agreement, and this agreement is a voluntary agreement made by the debtor and no force, duress or coercion has been used to force her to make this agreement.

      B. That she can make the monthly payments set forth in this agreement.
    4. The debtor further warrants that she understands the following principles:
      A. That she is not required to sign this agreement by any non-bankruptcy law or bankruptcy law or by any other agreement not in accordance with the Bankruptcy Code, and this agreement is wholly voluntary on her part.
      B. That she is not required to obey this agreement if this agreement is not filed with the United States Bankruptcy Court.
      C. If this agreement is not accompanied by the affidavit of her attorney finding that the agreement is a fully informed and voluntary agreement by the debtor and does not impose an undue hardship on the debtor or dependant of the debtor; then it is not a valid agreement.
      D. That she does not have to honor this agreement if she should rescind this agreement within sixty (60) days after the filing of the agreement, or she may rescind the agreement anytime prior to discharge whichever occurs later by giving the notice of recission to the holder of this claim.

  18. On January 23, 2001, a discharge was filed in the debtor's Chapter 7 bankruptcy case.

  19. On February 1, 2001, the subject reaffirmation agreement was filed in the debtor's Chapter 7 bankruptcy case.

  20. On February 1, 2001, the bank filed a motion for declaratory judgment that the reaffirmation agreement was valid notwithstanding its post-discharge filing, and notice of motion and resistance date in the debtor's Chapter 7 bankruptcy case. The motion, with proof of service, and the notice of motion and resistance date were duly served, with file-stamped copies of the same received from the Bankruptcy Court by counsel for the bank on February 5, 2001.

  21. No resistance to the motion for declaratory judgment was made or filed.

  22. On March 21, 2001, an order was entered granting the motion for declaratory judgment.

  23. No appeal was taken from the March 21, 2001, order, and the order has not been modified, vacated, or set aside.

  24. The deed of trust recorded on October 27, 2000, has not been modified, canceled, or reconveyed.

  25. The debtor made payments in accordance with the subject note modification agreement and reaffirmation agreement until September 5, 2007.

  26. The debtor has been in default on the subject loan since September 6, 2007.

27. The debtor filed the present Chapter 7 bankruptcy case on September 21, 2010, and listed the subject debt owed to the bank on Schedule F.

28. On November 10, 2010, the debtor filed an amended Schedule D and an amended statement of intention listing the subject debt to the bank as a secured claim and reflecting that she intended to retain the collateral, being the home located at 315 South Silber in North Platte, Nebraska, and to make regular payments to the bank.

29. On December 17, 2010, the debtor filed a second amended Schedule D and second amended statement of intent, which deleted from Schedule D the indebtedness owed to the bank, but stated the debtor's intention to retain the home.

The debtor is correct that the deed of trust was obtained post-petition without relief from the automatic stay. The question is whether it matters. Chapter 7 deals with the discharge of pre-petition debts; it is not concerned with post-petition claims. A debtor is free to enter into post-petition agreements and use post-petition funds to pay creditors. The automatic stay is in place to ensure the orderly administration of the estate by preventing pre-petition creditors from cannibalizing the estate to the detriment of the debtor and other creditors. Likewise, reaffirmation agreements are for pre-petition claims and are unnecessary for post-petition debts. In this case, the debtor would have been free to enter into any sort of mutually agreed-to arrangement with the bank, had the bank not been holding an existing claim. Because the bank did hold a secured claim and arguably took steps to bolster its position – although, as will be discussed below, the debtor's actions had eroded that position – there are issues regarding violation of the automatic stay.

"The automatic stay is among the most basic of debtor protections under bankruptcy law," *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997), and "is designed to protect debtors from all collection efforts while they attempt to regain their financial footing." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). To safeguard this bedrock provision of the bankruptcy system, "courts must display a certain rigor in reacting to" stay violations. *Soares*, 107 F.3d at 975-76.

The Eighth Circuit Court of Appeals has not expressed an opinion as to whether such a violation renders the deed of trust void or merely voidable, *Riley v. United States*, 118 F.3d 1220, 1222 n.1 (8th Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998), although the Eighth Circuit's Bankruptcy Appellate Panel has expressed agreement with the majority position that actions in violation of the automatic stay are void ab initio. *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 325 (B.A.P. 8th Cir. 1999).

However, courts have recognized equitable exceptions to the voidness principle which allow a bankruptcy court to grant retroactive relief from the automatic stay under appropriate conditions. *First Am. Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999). Such relief requires compelling circumstances, and the court should consider such factors as the creditor's actual or constructive knowledge of the stay; whether the debtor acted in bad faith; whether there

was equity in the property; whether the property was necessary for an effective reorganization; whether grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; whether failure to grant retroactive relief would cause unnecessary expense to the creditor; and whether the creditor has detrimentally changed its position on the basis of the action taken. *Id.*

Assuming for purposes of these motions that the bank violated the stay by taking the deed of trust, many of the equitable considerations for retroactive relief weigh in favor of the bank. However, genuine questions of material fact exist on at least a couple of important matters. First, there is a question of fact as to whether the bank was aware of the bankruptcy filing and the resulting stay when it obtained the debtor's signature on the note modification and deed of trust. It did not receive written notice of the bankruptcy filing until the next business day after meeting with the debtor to sign the documents, and the bank's officers claim the debtor did not mention the bankruptcy filing when they met to execute the deed of trust and note modification agreement. The debtor maintains she verbally informed them of the bankruptcy.

The debtor also suggest she felt forced into signing the deed of trust by statements or implications made by the bank officers, and because the bank was in a superior bargaining position. Each party offered consideration for the new contract, in that the debtor obtained a lower monthly payment in exchange for the deed of trust, but there is a question of whether the debtor was impermissibly induced into entering the agreement.

With regard to the factor of equity in the property, the schedules from the debtor's 2000 bankruptcy case – which were filed about three weeks after the petition was filed – indicate she had little in the way of personal property. The 1996 Suburban which was pledged to the bank was valued at $20,000.00, subject to a $2,400.00 exemption. The bank's claim was valued at $28,000.00, so the bank was undersecured.

The debtor's attorney was under the impression the bank's deed of trust dated to 1997, so it was listed in the schedules as a second lien against the property. The house was subject to the first deed of trust of Wells Fargo. The debtor had some equity in the property as of the petition date, valuing the residence at $70,000.00 with approximately $64,000.00 due to Wells Fargo. The Wells Fargo debt was also reaffirmed post-discharge, because the debtor desired to keep the house.

Next, the bank had grounds for relief from the stay. Prior to obtaining the deed of trust, the bank's loan was secured by a vehicle and some personal property. According to the bank, the debtor informed the bank in August 2000 when she was in default on the loan that she had sold some of the collateral without remitting the proceeds to the bank and that her former husband had left the state with some of the collateral, which she was reluctant to pursue because she was averse to angering him. As a result, the bank had a loan in default with neither the collateral it had bargained for nor the proceeds of that collateral, plus a debtor who wanted to reduce the monthly payments by more than $600.00. Had the bank filed a motion for relief early in the case and pointed out the loss and disappearance, and sale out of trust, of its collateral, the court would likely have granted relief for cause. The parties would have been free to negotiate a resolution of the bank's claim. As it was, the

bank took a deed of trust instead and the parties conducted themselves in accordance with the modified note agreement for nearly seven years. Only when the debtor filed the current case and her counsel reviewed the paperwork did the issue of the stay violation come to light.

Third, the factor regarding detriment and unnecessary expense to the creditor favors the bank. The bank forewent its collection remedies in 2000 in reliance on the deed of trust. The debtor had the benefit of reaffirming and making low monthly loan payments for seven years. To void the deed of trust and attempt to unwind eleven years' worth of transactions, particularly when most of the personal property that originally secured the note appears to be long gone, would be prohibitively difficult and would place the bank in a worse position.

Fourth, there is no evidence of bad faith on the part of the debtor. The present state of affairs appears to be the result of misunderstandings and/or lack of communication, from the post-petition execution of the deed of trust to the statement in the schedules that this was a pre-existing security interest to the bank's belief that the reaffirmation agreement and declaratory judgment would cure any procedural deficiencies.

While the court does not abide stay violations, the bank should be given an opportunity to prove that if a stay violation did occur here, the equitable considerations should justify retroactive relief from the stay.

IT IS ORDERED:

1. The debtor's motion to strike pleading/brief (Fil. No. 35) is denied.

2. The debtor's motion to strike (Fil. No. 57) the exhibits at filings 41 through 46, and any references to them in the plaintiff's brief at filing 48, is granted.

3. The debtor-defendant's motion for summary judgment (Fil. No. 23) is denied.

4. The plaintiff's motion for partial summary judgment (Fil. No. 28) is denied.

DATED: October 6, 2011.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
	*Jeffrey M. Eastman
	*Katherine R. Hall
	U.S. Trustee
Movant (*) is responsible for giving notice to other parties if required by rule or statute.